[L. A. No. 26767. In Bank. Aug. 28, 1962.]

VIRGINIA CHANCE, Plaintiff and Respondent, v. LAWRY'S, INC., et al., Defendants and Appellants.

Carol G. Wynn, Anthony M. Wynn, Frank W. Woodhead, Robert E. Morrow and Henry F. Walker for Defendants and Appellants.

I. B. Kornblum and David H. Kornblum for Plaintiff and Respondent.

PETERS, J.—Plaintiff, Virginia Chance, was awarded a unanimous verdict of $15,000 against defendants Lawry's, Inc., a restaurant, John Krenz, its manager, and Donald F. Shaw, the general contractor who was engaged in remodeling the premises. Defendants appeal from the judgment entered on this verdict, and from the order denying their motions for judgment notwithstanding the verdict. The same jury also returned a verdict against Alfred Chance, husband of Virginia, on his cause of action seeking to recover "damages for loss of consortium and services." He has not appealed from this adverse judgment.

On September 29, 1958, Virginia Chance was injured when she fell in the foyer of Lawry's restaurant. Earlier in that year Lawry's had started to remodel the restaurant, including the foyer, under the supervision of defendant Shaw, a general contractor. One feature of the remodeling was the installation of a planter box in the foyer of the restaurant. The foyer was approximately 6 feet wide and 10 feet long, and was enclosed by glass double swinging doors at each end. The planter box, recessed into the west wall of the foyer (to the right-hand side of one leaving the restaurant), was about 30 inches in width, 6 feet in length and 18 inches in depth. It was joined to the floor by a coved base of smooth terrazzo. On September 29th Shaw was still doing some construction work in the foyer, although the carpenter work on the planter box had been completed. At the time of the injury the workday was over

and Shaw's workmen and subcontractors had left the premises.

Mrs. Chance was one of a party of eight who had dined at Lawry's on the night of the accident. After they had finished dining and were about to depart, Mr. Martini, one of the party, opened the right-hand glass door into the foyer and then stepped partly in front of it holding the door open to permit the others to pass through. Mrs. Chance followed and stood next to Mr. Martini, at his right. Mr. Humphrey, also in this party, was standing on Mrs. Chance's right. Thus the three stood with their backs to the planter box and to the west wall of the foyer waiting for the rest of the group. As Mrs. Chance entered the foyer another party was either going out of or coming into Lawry's. This resulted in considerable crowding. To relieve the congestion and to permit someone to pass, both Humphrey and Mrs. Chance stepped backward. Humphrey bumped against the planter box and momentarily lost his balance. When he recovered his balance he saw that Mrs. Chance had not been so fortunate. As she stepped backward she struck the back of her knee on the wall of the planter box, lost her balance and fell into the open box. There is no dispute but that the foyer was then well lighted. Mrs. Chance, Martini and Humphrey testified that they had not observed the planter box either when they entered Lawry's before dinner or when they reentered the foyer after dining. They admitted, however, that they could have seen it had they looked.

Admittedly Mrs. Chance was an invitee of Lawry's. The duty imposed on the invitor is clear. ▮▮ ''It is the general rule that the proprietor of a store who knows of, or by the exercise of reasonable care could discover, an artificial condition upon his premises which he should foresee exposes his business visitors to an unreasonable risk, and who has no basis for believing that they will discover the condition or realize the risk involved, is under a duty to exercise ordinary care either to make the condition reasonably safe for their use or to give a warning adequate to enable them to avoid the harm.'' (*Bridgman* v. *Safeway Stores, Inc.*, 53 Cal.2d 443, 446 [2 Cal. Rptr. 146, 348 P.2d 696] ; see also *Neel* v. *Mannings, Inc.*, 19 Cal.2d 647, 652 [122 P.2d 576] ; *Blumberg* v. *M. & T. Incorporated*, 34 Cal.2d 226, 229 [209 P.2d 1].) ▮ It is also the law that a business invitee is not obliged to make a critical examination of the surroundings he is about to enter, but on the contrary has the right to assume that those in charge have

exercised due care in the matter of inspection, and have taken proper precautions for the safety of the patrons, and will use reasonable care in guarding him against injury. (*Chardon* v. *Alameda Park Co.*, 1 Cal.App.2d 18, 23 [36 P.2d 136].)

Under the facts, the jury could have concluded that the open planter box, situated as it was in a narrow foyer of a busy restaurant, and which constituted a hazard when a patron merely stepped aside, as a matter of courtesy, to let another person pass, was a dangerous condition. There were no signs, barricades or warnings in front of the trench. There is substantial evidence to support the jury's conclusion that in the exercise of ordinary care in these circumstances Lawry's should have either obviated the danger or warned Mrs. Chance of its existence.

It is Lawry's main contention that, under the facts, it was under no duty to warn its patrons because the danger of the open planter box was so obvious that it could reasonably anticipate that patrons would see and apprehend the danger. Therefore, so it is argued, Lawry's owed no duty to warn Mrs. Chance of such a danger. (2 Witkin, Summary of Cal. Law (7th ed. 1960) p. 1457; *Seavey, Swift & Co.* v. *Schuster— Liability to One Aware of Danger* (1952) 65 Harv. L. Rev. 623, 625; Keeton, *Personal Injuries Resulting From Open And Obvious Conditions* (1952) 100 U. Pa. L. Rev. 629, 634.)

In our opinion this was a fact question for the jury. Under the evidence the jury could reasonably conclude that Lawry's could not have reasonably expected that its patrons would necessarily see the planter box and apprehend the danger. Lawry's knew that its restaurant and bar could accommodate as many as 300 persons at any one time, and that the small and narrow foyer, measuring only 6 by 10 feet, would be crowded during the dinner hours. Moreover, Lawry's must be held to know that the members of a dinner party working their way through a crowded restaurant foyer cannot be expected to be as observant as a pedestrian in the open street (see *Blodgett* v. *B. H. Dyas Co.*, 4 Cal.2d 511, 513 [50 P.2d 801]).

Whether the danger created by the open planter box was sufficiently obvious to relieve Lawry's of its duty to warn Mrs. Chance of its existence was peculiarly a question of fact to be determined by the jury. (*Revels* v. *Southern Cal. Edison Co.*, 113 Cal.App.2d 673, 679 [248 P.2d 986].)

Defendants also urge that even if Lawry's was under a duty to warn its patrons of the danger, the danger was so obvious that Mrs. Chance must be held guilty of contributory

negligence as a matter of law in not seeing it. [7] "To establish the defense of contributory negligence as against the verdict of a jury, the evidence must be such that the appellate court can say that there is no substantial conflict on the facts, and that from the facts reasonable men can draw but one inference, which inference points unerringly to the negligence of the plaintiff proximately contributing to his own injury." (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183] ; see also *Florez* v. *Groom Development Co.*, 53 Cal.2d 347, 354 [1 Cal.Rptr. 840, 348 P.2d 200].) Defendants urge that this inference must be drawn since Mrs. Chance, Humphrey and Martini all testified that if they had looked they would have seen the planter box. Defendants rely on the familiar proposition that a person is under a duty to look where he is going and to see that which is in plain sight in front of him (*Atherley* v. *MacDonald, Young & Nelson, Inc.*, 142 Cal.App.2d 575, 585 [298 P.2d 700] ; *Blodgett* v. *B. H. Dyas Co., supra,* 4 Cal.2d 511, 513). But, as this court said in *Laird* v. *T. W. Mather, Inc.*, 51 Cal.2d 210, 218 [331 P.2d 617], "There are many cases involving accidents in mercantile establishments where the question of plaintiff's contributory negligence has been held to be a question for the jury even though the plaintiff failed to observe what may have been an obvious danger." (See e.g., *Neel* v. *Mannings, Inc., supra,* 19 Cal.2d 647, 655-656 [ceiling board over stairway] ; *Hodge* v. *Weinstock, Lubin & Co.,* 109 Cal.App. 393, 397 [293 P. 80] [platform] ; *Brinkworth* v. *Sam Seelig Co.,* 51 Cal.App. 668, 671 [197 P. 427] [boxes in aisle] ; *Walsh* v. *Maurice Mercantile Co.,* 20 Cal.App.2d 45, 48-49 [66 P.2d 181] [scale protruding into aisle] ; *Wills* v. *J. J. Newberry Co.,* 43 Cal.App.2d 595, 601-602 [111 P.2d 346] [vomitus in aisle] ; *Madigan* v. *O. A. Hale & Co.,* 90 Cal.App. 151, 158 [265 P. 574] [cleats missing on slide].) It cannot be said as a matter of law that Mrs. Chance was contributively negligent for not seeing the planter box or in not looking back before she stepped backward. Admittedly she did not know of the existence of the planter before her fall. She had only been to Lawry's a few times previously, the last being long before the remodeling began. As she entered the foyer from the restaurant she did not face the planter and it was therefore not within her scope of vision. Furthermore, even if she had looked to the side as she entered the foyer, with the distractions of the crowded foyer and after-dinner conversation she might not have immediately apprehended the danger of the 18-inch-high planter

box recessed into the west wall. Lulled by the realization that she was in a good Beverly Hills restaurant, Mrs. Chance was entitled to assume that there would not be a dangerous cavernous box in the crowded foyer. Whether she made a reasonable use of her faculties and acted as a reasonable person, under the circumstances, was a factual question for the jury's determination. (*Atherley* v. *MacDonald, Young & Nelson, Inc., supra,* 142 Cal.App.2d 575, 585; *Curland* v. *Los Angeles County Fair Assn.,* 118 Cal.App.2d 691, 695 [258 P.2d 1063].)

It must be held, therefore, that there was substantial evidence to support the implied findings of negligence on the part of Lawry's and its general manager Krenz, and that Mrs. Chance was not guilty of contributory negligence. This being so, it ends the inquiry of this court as to these issues (*Crawford* v. *Southern Pac. Co., supra,* 3 Cal.2d 427, 429).

Defendant Shaw, the contractor, contends that he breached no duty of care he owed to Mrs. Chance. It is his contention that although Mrs. Chance was an invitee of Lawry's she was but a licensee as to the contractor. As licensor, Shaw maintains that his duty was simply to refrain from injuring Mrs. Chance willfully or through active negligence. Mrs. Chance, on the other hand, claims that Shaw should be held to the same duty of care as that imposed upon the invitor, Lawry's.

It is clear that, where an independent contractor exercises control over the owner's premises, his duty of care toward third persons is commensurate with that of the owner (see *Coggins* v. *Hanchette,* 52 Cal.2d 67, 74 [338 P.2d 379]; *Donahoo* v. *Kress House Moving Corp.,* 25 Cal.2d 237, 243 [153 P.2d 349]) especially where the plaintiff is the employee of a subcontractor (*Florez* v. *Groom Development Co., supra,* 53 Cal.2d 347, 354; *Revels* v. *Southern Cal. Edison Co., supra,* 113 Cal.App.2d 673, 677). In other cases his duty of care is said to be that of a licensor (*Allen* v. *Jim Ruby Constr. Co.,* 138 Cal.App.2d 428 [291 P.2d 991]) or is "analogous" to that of an invitor (*Garner* v. *Pacific Elec. Ry. Co.,* 202 Cal.App.2d 720, 727 [21 Cal.Rptr. 352]). The exact duty of care imposed on an independent contractor varies with the seemingly endless combinations of relationships possible and cannot be defined by any general formula.

The imposition of a legal duty by precisely defining the status of the injured person *vis-à-vis* the tortfeasor is hard enough and often arbitrary where the defendant is an owner or occupier of real property (*Fernandez* v. *Consolidated Fish-*

*eries, Inc.,* 98 Cal.App.2d 91, 96 [219 P.2d 73]; *Hession* v. *City & County of San Francisco,* 122 Cal.App.2d 592, 602 [265 P.2d 542]; *Miller* v. *Desilu Productions, Inc.,* 204 Cal. App.2d ——, —— [22 Cal.Rptr. 36]; Hughes, *Duties to Trespassers: A Comparative Survey and Revaluation* (1959) 68 Yale L.J. 633). But where the defendant is not an owner or occupier the application of these legal distinctions becomes impossible in fact and is without reason. These limitations on the duty of care of the owner or occupier "originated in an overzealous desire to safeguard the right of ownership and it was regarded under a system of landed estates. . . ." (2 Harper & James, Torts (1956) § 27.2, p. 1434.) For that reason it can be forcefully argued that this immunity should not be extended to others. (2 Harper & James, Torts (1956) § 27.2, p. 1434; Fleming, Torts (1957) p. 431; Marsh, *The History and Comparative Law of Invitees, Licensees and Trespassers* (1953) 69 L. Q. Rev. 182, 359; *Langazo* v. *San Joaquin L. & P. Corp.,* 32 Cal.App.2d 678, 687-690 [90 P.2d 825]; *Humphrey* v. *Twin State Gas & Electric Co.,* 100 Vt. 414 [139 A. 440, 442, 56 A.L.R. 1011].) Justice will not be served by trying to fit each case involving an independent contractor into a Procrustean bed bounded by the concepts of "invitee" at the head and "licensee" at the foot.

The liability of an independent contractor to one not a party to his contract "is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the forseeability of harm to him, the degree of certainty that he suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, and the policy of preventing future harm." (*Stewart* v. *Cox,* 55 Cal.2d 857, 863 [13 Cal.Rptr. 521, 362 P.2d 345]. See also *Garcia* v. *Soogian,* 52 Cal.2d 107, 110 [338 P.2d 433]; *Fernandez* v. *Consolidated Fisheries, Inc., supra; Hession* v. *City & County of San Francisco, supra;* Prosser, Torts (2d ed. 1955) § 36, p. 167.)

On several occasions the courts of this and other states have defined the independent contractor's duty to third persons without regard to the legal classifications of "invitee," "licensee" and "trespasser." In *Donnelly* v. *Hufschmidt,* 79 Cal. 74 [21 P. 546], a repairman, hired by the lessor, was held liable when a tenant tripped over a box of tools which had been left in the passageway. The court said (at pp. 75-76)

"Nor can it be held that the defendants owed no duty to the plaintiff. The defendants were bound so to exercise their rights as not to interfere with the rights of others. [Citation.] They owed the duty to the plaintiff to do her no injury in the employment of their own legal rights." (See also *Burke* v. *Zanes,* 193 Cal.App.2d 773 [14 Cal.Rptr. 619], following *Donnelly* v. *Hufschmidt, supra.*)

In *Hall* v. *Barber Door Co.,* 218 Cal. 412 [23 P.2d 279], an independent contractor hired by the landlord was held liable for injuries caused by a falling door which the contractor had improperly installed. Defendant claimed that he had no duty of care toward the plaintiff, who was a tenant of the landlord. This court said, "It cannot be doubted that an independent contractor is responsible to an occupant of a building rightfully on the premises at the request or consent of the owner for any wrongful acts that may be committed by himself or his employees while the stipulated work is in progress and resulting in injuries to such occupant. The ground upon which this liability is based is the implied duty which the law casts upon the independent contractor, as the person in charge and control of the work, to see that the rights of other persons, rightfully on the premises, are not injuriously affected by the performance of the work. [Citations. . . .] Upon both principle and authority, it is clear that an independent contractor, who by his own negligence creates dangerous conditions during the progress of the work, should be held responsible for an injury occasioned by those conditions to one rightfully on the premises, and should be held liable for damage directly attributable to the failure to perform this duty." (218 Cal. at p. 419.)

The independent contractor's duty of care was succinctly stated by Denning, Lord Justice, as being "a general duty imposed by law to use reasonable care to prevent damage to persons whom he may reasonably expect to be affected by his work. . . . The cases show, moreover, that the duty of care is owed to all those whom the contractor may reasonably expect to be affected by his work, whatever the capacity in which they come, whether as invitees or licensees or as other contractors. . . ." (*Riden* v. *A. C. Billings & Sons, Ltd.* [1956] 3 All E. R. 357, 361. See also Civ. Code, § 1714; *Handley* v. *Capital Co.,* 152 Cal.App.2d 758 [313 P.2d 918]; *Kimber* v. *Gas Light & Coke Co.* [1918] 1 K.B. 439, 447 ["It is A.'s duty to carry on his work with due precautions for the safety of those whom he knows, or ought reasonably to know,

may be lawfully in the vicinity of his work. . . ."] ; *Bacak* v. *Hogya,* 4 N.J. 417 [73 A.2d 167, 170] ["An independent contractor hired by an owner of lands to do work thereon is under a legal duty to exercise ordinary care to render the premises safe for persons lawfully on the premises. . . ."] ; *Hickman* v. *Parks Constr. Co.,* 162 Neb. 461 [76 N.W.2d 403, 409, 62 A.L.R.2d 1040] ; *Crane Elevator Co.* v. *Lippert,* 63 F. 942, 947 [11 C.C.A. 521].)

■ It is undisputed that Shaw knew the restaurant was open for business during the remodeling, and that the foyer was the only means of ingress and egress for patrons. Mrs. Chance was certainly a person that Shaw could "reasonably expect to be affected by his work." That Shaw left the premises by 4:30 every afternoon and had no actual control at the time of Mrs. Chance's accident was a factor to be considered by the jury in determining whether Shaw's conduct was reasonable, but the "responsibility of contractors for defective work does not cease as soon as they leave the premises. . . ." (Fleming, Torts (1957) p. 431; *Dow* v. *Holly Manufacturing Co.,* 49 Cal.2d 720, 724 [321 P.2d 736] ; *Hale* v. *Depaoli,* 33 Cal.2d 228, 230 [201 P.2d 1, 13 A.L.R.2d 183] ; *Hall* v. *Barber Door Co., supra,* 218 Cal. 412; *Tomchik* v. *Julian,* 171 Cal.App.2d 138, 142 [340 P.2d 72].) Nor is it here controlling that Shaw was building the planter box according to plans furnished by Lawry's architect. This is not a case where "an accident is the result of work done by a contractor in conformity with plans and specifications . . . and is the result of fault in such plans and specifications. . . ." (*Johnson* v. *City of San Leandro,* 179 Cal.App.2d 794, 801 [4 Cal.Rptr. 404].) The jury could well have decided that a reasonable contractor in Shaw's position, knowing the capacity of Lawry's and the narrowness of the foyer, would have put a board over the planter box, or installed a barricade or warning sign, before he left the job. It cannot be said that the jury committed error in holding that Shaw did not meet the standard of care required of him in this situation.

The defendants next complain of several of the instructions. ■ Defendant Shaw complains of the court's refusal to give an instruction that consisted of two parts: (1) a person entering a building under construction or reconstruction assumes the risk and (2) a contractor has no duty toward invitees of the owner of the premises to change his method of operations "which are carried on so openly as to be obvious to all observers." The evidence would not support such an

instruction. Shaw and his employees supposedly left the premises each afternoon in such condition that the restaurant could be safely used by the public that evening, and plaintiff wife was injured in a place where she was expected to go, the foyer, as the result of an unsafe condition, the exposed planter box. And, as shown above, the danger was not "obvious to all observers."

Defendant Lawry's complains of an instruction given to the effect that said defendant owed Mrs. Chance and her husband as customers "a duty to exercise ordinary care to keep the premises in a reasonably safe condition or *to warn them of any danger* so as not to unnecessarily expose them to danger or accident. (Emphasis added.) . . . ." Since an invitor is not required to give an invitee warning or notice of an obvious danger, Lawry's contends that the above-*underscored* language put an undue burden on it. However, following the above-challenged instruction the court instructed: "But the responsibility of one having control of the premises is not absolute; it is limited to the performance of certain duties defined in my instructions . . . [the owner] is not bound to discover defects which reasonable inspection would not disclose, and he is entitled to assume that the invitee will perceive that which would be obvious to her upon ordinary use of her own senses. In brief, no duty exists to give the invitee notice of an obvious danger. . . . Each the invitee and the invitor, so long as he is exercising ordinary care and no circumstance exists that either causes him or would cause a reasonably prudent person in his position to think differently, has a right to assume that the other will be possessed of normal faculties of sight and hearing and will exercise ordinary care, and he has the right to rely on that assumption." The instructions must be considered as a whole. (*Martens* v. *Redi-Spuds, Inc.*, 113 Cal.App.2d 10, 13 [247 P.2d 605].) It is clear that in so considering the instructions here, the jury must have understood that Lawry's did not have a duty to warn invitees of an *obvious* danger; however, it did have a duty to warn them not only of conditions actually known by it to be dangerous but also of "conditions which might have been found dangerous by the exercise of reasonable care." (*Blumberg* v. *M. & T. Incorporated, supra,* 34 Cal.2d 226, 229.)

Defendants next contend that the trial court committed prejudicial error in giving the following instruction (based on *Summers* v. *Tice,* 33 Cal.2d 80 [199 P.2d 1, 5 A.L.R.2d 91]): "If you should find that the defendants

Lawry's, and Donald F. Shaw, General Contractor, both were negligent in the manner in which they caused and/or permitted the empty planter box to be built, located and remain in the condition in which it was at the time Mrs. Chance fell into it, and you find that the danger itself, if any[,] was not warning to her and that she was given no other warning of its existence, condition and location at that time, and if you should find that from such negligence, as a proximate result thereof she was injured, and if you should find that she was not guilty of contributory negligence, you shall hold both said defendants liable for such injury unless the evidence shows by a preponderance thereof that the conduct of one of said defendants whom you can identify was not a proximate cause of the injury; and in the event of such a showing you shall find such defendant not liable and the other liable." Defendants argue that this instruction (No. 104-F) improperly placed on them the burden of negating any possibility of negligence or liability.

We do not agree. The jury was instructed (at the request of all parties) that all parties asserting "the affirmative of an issue must prove that issue by a preponderance of the evidence." The instruction (No. 21) explains what is meant by preponderance of the evidence and then states specifically that "plaintiff has the burden of proving the following issues: (1) that a defendant was negligent and (2) that such negligence, if any, was a proximate cause of the accident and the injuries, if any, suffered by plaintiff (3) the nature and extent of such injuries and damages. Plaintiff has this burden as to each defendant." Instruction No. 132.1 (given at the request of defendants Lawry's and Krenz) stated: "The law does not permit you to guess or speculate as to the cause of the accident in question. If the evidence is equally balanced on the issue of negligence, contributory negligence or proximate cause, then your findings must be against the party making the charge on that issue." Instruction No. 171-A (given at the request of defendants) stated: "The burden rests upon each plaintiff to prove by a preponderance of the evidence the elements of her damage, if any. The mere fact that an accident happened, considered alone, would not support a verdict for any particular sum."

The questioned instruction (No. 104-F) was given *between* other instructions dealing with plaintiff's burden of proof. Furthermore, the questioned instruction itself began with the statement that to be applicable, the jury must have found

*both* defendants negligent and that the *negligence proximately caused plaintiff's injuries.* The jury must be presumed to have understood the instructions on burden of proof and negligence as given them (*Poncino* v. *Sierra Nevada L. & C. Co.*, 104 Cal.App. 671, 675 [286 P. 729]), and the fact that the jury returned a unanimous verdict after only three hours' deliberation (including lunchtime) indicates that the jury was not confused.

Moreover, even if the giving of instruction 104-F was error, such error was not prejudicial. The jury was properly instructed on the plaintiff's burden of proof and the issue of negligence applicable to the respective defendants. It does not appear that a "different result would have been probable had the questioned instructions not been given." (*Taylor* v. *Pacific Container Co.*, 148 Cal.App.2d 505, 513 [306 P.2d 1049].) In such a case the unanimous verdict of the jury should be upheld. (Cal. Const., art. VI, § 4½.)

The defendants next maintain that the record shows that the medical expenses for injuries to Mrs. Chance were paid by her husband, and that the jury was instructed at plaintiff's request that any recovery therefor was to be by her husband.[1] The jury returned a verdict of $15,000 in favor of plaintiff-wife and a verdict in favor of defendants against plaintiff-husband. This, defendants contend, is an inconsistency in the verdicts which requires a reversal, citing *Lanning* v. *Trenton & Mercer County Traction Corp.*, 3 N.J. Misc. 1006 [130 A. 444]; *Henderson* v. *Abbotts Alderney Dairies, Inc.* 7 N.J. Misc. 454 [146 A. 47]; *Swiencicki* v. *Wieczerzak*, 6 N.J. Misc. 145 [140 A. 248]; *Watkins* v. *Meyers*, 12 N.J. 71 [95 A. 2d 705, 36 A.L.R.2d 1330]; *Berry* v. *Foster*, 199 Tenn. 352 [287 S.W.2d 16]; and *Coleman* v. *New York City Transit Author-*

---

[1]Instruction number 178-C was read to the jury as follows: "If you should find for both plaintiffs, you are instructed to fix separately the damages, if any, suffered by each, and in your verdict to separately award to each the sum to which you shall have found him or her entitled. If you should find that only one of the plaintiffs is entitled to recover, you shall determine only the damage suffered by that one. Simply by way of a brief, outline summary, and not intending to modify or to supplement any instructions previously given, I would list again the elements of alleged damage that you may properly consider as to each plaintiff, if he or she is entitled to recover: As to the husband Alfred Chance: expenses, if any, incurred by him and embraced within my previous instructions on that subject; loss, if any, of his wife's services, past or future; expenses, if any, incurred by him and found to be recoverable under my instructions. As to the wife Virginia Chance: compensation for her pain, discomfort and anxiety, if any, as embraced within my previous instructions on that subject."

*ity,* 28 Misc.2d 694 [208 N.Y.S.2d 186]. These cases do hold that if a plaintiff-wife seeking general damages recovers, and the coplaintiff-husband seeking recovery for loss of consortium and for medical expenses sustained because of the injuries does not recover, then the verdicts are inconsistent, and the defendant is entitled to a new trial. The reasoning underlying these cases, that such inconsistent verdicts "demonstrate the unfitness of the jury to determine the respective rights and obligations of the parties . . ." (*Lanning* v. *Trenton & Mercer County Traction Corp., supra,* 130 A. 444), is not convincing. Negligence of the defendants and plaintiff-wife's freedom from negligence were the primary issues to be determined by the jury. The verdict for plaintiff-wife indicates the jury's determination as to these issues. Of course, had the jury returned a verdict in favor of the husband for medical expenses incurred and *against* the plaintiff-wife, then a reversal would be proper since the husband's cause of action is derivative (*Elser* v. *Union Paving Co.,* 167 Pa. Super. 62 [74 A.2d 529, 530] ; *Meyer* v. *Austin,* 45 Pa. D. & C. 44). But here the jury's verdict clearly implies that they found defendants were negligent and that Mrs. Chance was free from contributory negligence. That being so it would be contrary to common sense and the efficient administration of justice to require a new trial on the issue of liability toward Mrs. Chance. We are impressed by the decisions of the Florida courts which in such circumstances would award the husband a new trial on the issue of damages only (*Loftin* v. *Anderson* (Fla.) 66 So.2d 470; *Thieneman* v. *Cameron* (Fla.App.) 126 So.2d 170; and see *McNett* v. *Volfi,* 205 Cal. 89, 93 [269 P. 932]). But while Mr. Chance, who has not appealed, may have "grounds for complaint because of the findings upon . . . [his] cause of action" defendants assuredly have none. (*McNett* v. *Volfi, supra,* at p. 93; *De Arman* v. *Connelly,* 134 Cal.App. 173, 181 [25 P.2d 24] ; *Oakes* v. *Baker,* 85 Cal.App. 2d 168, 169 [192 P.2d 460] ; *Helsel* v. *Consolidated Traction Co.,* 14 Pa.Super. 420, 423.)

This is not a case, as defendants claim, analogous to an action against an employer based on respondeat superior, where liability of the employer is entirely dependent on that of the employee so that a judgment against the employer cannot stand where judgment is rendered in favor of the employee. (*Bradley* v. *Rosenthal,* 154 Cal. 420 [97 P. 875, 129 Am.St.Rep. 171] ; *Tolley* v. *Engert,* 71 Cal.App. 439 [235 P.

651].) Plaintiff-wife's right to recover was not dependent on recovery by her husband. Her right was independent of her husband's. This objection should be raised, if at all, by plaintiff-husband, and not by defendants (*McNett* v. *Volti, supra*).

The evidence, viewed in the light favorable to the prevailing party (*Crawford* v. *Southern Pac. Co., supra,* 3 Cal.2d 427, 429), is sufficient to support the judgment and there has been no error in the instructions which would warrant a reversal. (Cal. Const., art. VI, § 4½.)

The judgment and order appealed from are affirmed.

Gibson, C. J., Traynor, J., White, J., and Tobriner, J., concurred.

McCOMB, J.—I would affirm the judgment as to defendants Lawry's, Inc., and John Krenz, but I would reverse it as to defendant Donald F. Shaw, and direct the trial court to enter a judgment in his favor, for the reasons set forth by Mr. Justice Ashburn in the opinion prepared by him for the District Court of Appeal (Cal.App.) 18 Cal.Rptr. 596.

Schauer, J., concurred.